**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

Christopher Cooley,

    Plaintiff,

                v.

Aevum Hotels, LLC,

    Defendant.

Case No. 1:21cv798

Judge Michael R. Barrett

## ENTRY AND ORDER AWARDING DEFAULT JUDGMENT, ATTORNEY'S FEES, AND COSTS

On May 3, 2022, the Clerk entered default against Defendant Aevum Hotels, LLC. (Doc. 12). Before the Court is Plaintiff Christopher Cooley's Motion for Default Judgment against Aevum Hotels (Doc. 13), as supplemented (Doc. 16). A hearing was held on Plaintiff's Motion on July 7, 2022. (*See* 07/07/2022 Minute Entry). Aevum Hotels did not respond to Plaintiff's Motion, nor did it appear at the hearing.[1]

### I. BACKGROUND

Plaintiff initiated this civil action by filing a Complaint on December 28, 2021 in which he named as defendants P&C Motel Corp. (dba Red Carpet Inn), Chato, LLC, and John Does 1 through 3. (Doc. 1). Plaintiff then filed a First Amended Complaint on February 15, 2022, naming a single defendant, Aevum Hotels, LLC (dba Red Carpet Inn). (Doc. 5). A summons, along with a copy of the First Amended Complaint, was

---

[1] Plaintiff served his default judgment motion and all related filings (by First-Class Mail) on Aevum Hotels, LLC's statutory agent registered with the Ohio Secretary of State. (Doc. 13 PAGEID 45, 46; Doc. 14 PAGEID 51; Doc. 16 PAGEID 79, 87; Doc. 18 PAGEID 107). Notice of the hearing date and time was included. (Doc. 14 PAGEID 49; Doc. 16 PAGEID 78, 79). At the July 7, 2022 hearing, Plaintiff's counsel represented that he has spoken (twice) to an individual claiming to be the hotel owner who is "aware" of this proceeding.

1

"substitute" served on the registered agent for Aevum Hotels, LLC on March 8, 2022, establishing an answer date of March 29, 2022. (Doc. 8); *see* Fed. R. Civ. P. 12(a)(1)(A)(i). Aevum Hotels failed to answer or otherwise respond to the First Amended Complaint within the 21-day deadline. Upon Plaintiff's request, the Clerk entered default against Aevum Hotels on May 3, 2022. (Docs. 11, 12). Plaintiff's default judgment motion followed.

## II. STANDARD OF LAW

The sequence of procedural steps required of one seeking judgment by default "begin[s] with the entry of a default by the clerk upon a plaintiff's request." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (quoting *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)); Fed. R. Civ. P. 55(a). Next, the party seeking default judgment must apply for one, either to the Clerk (if the claim is for a "sum certain" or a sum that "can be made certain by computation") or the Court (in all other cases). Fed. R. Civ. P. 55(b)(1), (b)(2). A court may enter default judgment without a hearing, but it also may hold a hearing when it needs to: conduct an accounting; determine the amount of damages; establish the truth of any allegations by evidence; or investigate any other matter. Fed. R. Civ. P. 55(b)(2)(A)–(D). When deciding whether to enter default judgment, a court "should take into account: 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citations omitted). As to the third

2

factor, "[o]nce a default is entered, well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true." *McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. April 27, 2011) (citing *Alfa Corp. v. Alfa Mort., Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008)); *see also Trice v. Lake & Country Real Estate*, No. 86-1205, 1987 WL 38852, at *2 (6th Cir. Oct. 29, 1987) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")). Still, a court must assess whether the factual allegations are legally sufficient to state the alleged cause of action. *McIntosh*, 2011 WL 1595150, at *3 (citing *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)). Finally, before entering default judgment, a court is obligated (as always) to consider whether it has both subject-matter and personal jurisdiction over a defendant. *See, e.g.*, *Citizens Bank v. Parnes*, 376 Fed. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment.") (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)).

### III. ANALYSIS

**Facts taken as true.** Plaintiff Christopher Cooley is an individual with vision and hearing impairments that qualify as disabilities under federal[2] and state[3] law. (Doc. 5

---

[2] *See* 42 U.S.C. §§ 12102(1)(A), 12102(2)(A).

[3] *See* Ohio Rev. Code § 4112.01(A)(13).

3

(¶¶ 5, 51)). Because his hearing and vision impairments are severe, he relies—heavily—on his service animal [4] (Larkin) for assistance with his major life activities. (*Id.* (¶¶ 2, 4–6)).

On August 11, 2021, Mr. Cooley telephoned Red Carpet Inn (located at 8590 Colerain Avenue, Cincinnati, Ohio 45251)—a place of public accommodation under federal[5] and state[6] law—to reserve a room. (*Id.* (¶¶ 2, 19)). During the call, he advised that he would be accompanied by his service animal. (*Id.* (¶¶ 2, 21)). A hotel employee stated that pets were not allowed. (*Id.* (¶¶ 2, 22)). However, he acknowledged that Mr. Cooley was asking about a service animal (as opposed to a pet) and stated that he needed to talk to the owner before he could process the reservation. (*Id.* (¶¶ 2, 23–24)). Mr. Cooley called back (twice) on August 13, 2021. (*Id.* (¶¶ 3, 25–31)). During the second call, the hotel employee informed him that the owner would not allow Mr. Cooley's service animal to stay with him at the hotel. (*Id.* (¶¶ 3, 31–33)). Thus, Mr. Cooley was unable to reserve a room at Red Carpet Inn because of his use of—and reliance on—a service animal. (*Id.* (¶¶ 3, 35)). The events leading up to the hotel denying him access and services caused Mr. Cooley to suffer panic attacks and other bodily injury (to include shortness of breath and heart palpitations). (*Id.* (¶ 36)).

Mr. Cooley's First Amended Complaint alleges disability discrimination under

---

[4] "Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. . . ." 28 C.F.R. § 36.104.

[5] *See* 28 C.F.R. § 36.104.

[6] *See* Ohio Rev. Code § 4112.01(A)(9).

federal (42 U.S.C. § 12182) (Count I)[7] and state (Ohio Rev. Code § 4112.02(G)) (Count II)[8] law, as well as negligent infliction of emotional distress (Count III)[9] and negligent hiring, retention, and/or supervision (Count IV)[10].

**Jurisdiction.** This Court has subject-matter jurisdiction of this civil action because Plaintiff alleges disability discrimination under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). This Court has supplemental jurisdiction over Plaintiff's state law claims because they are "so related" to his federal claim that "they form part of the same case or controversy[.]" *See* 28 U.S.C. § 1367(a). Finally, this Court has personal jurisdiction over Defendant Aevum Hotels, which is an Ohio limited liability company. (Doc. 5 (¶¶ 7–9)).

**Sufficiency of the First Amended Complaint.** Title III of the federal Americans with Disabilities Act prohibits public accommodations discrimination. 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). In Ohio, it is an unlawful discriminatory practice "[f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike

---

[7] (Doc. 5 (¶¶ 38–49)).

[8] (Doc. 5 (¶¶ 50–54)).

[9] (Doc. 5 (¶¶ 55–58)).

[10] (Doc. 5 (¶¶ 59–66)).

5

to all person regardless of race, color, religion, sex, military status, national origin, **disability**, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." Ohio Rev. Code § 4112.02(G) (emphasis added); see Ohio Rev. Code § 4112.01(A)(9). More specifically, "It shall constitute unlawful discrimination in violation of Chapter 4112. of the Revised Code for any facility which is a place of public accommodation to: . . . [d]eny any disabled person in a place of public accommodation the attendance of an animal assistant[11] or require the disabled person to pay an extra charge for the attendance of the animal assistant." Ohio Admin. Code 4112-5-06(A)(4). The allegations contained within the First Amended Complaint clearly state a cause of action for disability discrimination under both federal and state law.

The allegations within the First Amended Complaint do not, however, state a cause of action for negligent infliction of emotional distress. The tort of negligent infliction of emotional distress "is generally asserted by a bystander because []he witnessed another person in danger and the defendant was unaware of the presence of the bystander." *David v. Matter*, 96 N.E.3d 1012, at ¶ 14 (Ohio Ct. App. 6th Dist. 2017). Absent an allegation of "danger to another," a claim for negligent infliction of emotional distress fails as a matter of law. Further, the Court finds that the allegations within the First Amended Complaint as to negligent hiring, retention, and/or supervision are threadbare and thus insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662,

---

[11] "'Animal Assistant' means any animal which aids the disabled. Specific examples include: (1) A dog which alerts a hearing impaired person to sounds; (2) A dog which guides a visually impaired person; (3) A monkey which collects or retrieves items for a person whose mobility is impaired." Ohio Admin. Code 4112-5-02.

6

678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). These rulings are largely irrelevant in terms of recovery, though, because Ohio Rev. Code § 4112.99(A) allows for recovery of "damages, injunctive relief, or any other appropriate relief[ ]" for violations of § 4112.02(A)(9).

***Russell* factors.** Nearly all seven factors weigh in favor of granting Plaintiff's motion. The prejudice to Mr. Cooley is apparent and the Court already has determined the sufficiency of the First Amended Complaint. And, based on the testimony of Plaintiff's counsel, Defendant Aevum Hotels is aware of this lawsuit but has deliberately chosen not to engage in litigation. (*See* Darr Decl., Doc. 16-2 (¶ 42)).

**Remedies.** Under federal law, a disabled individual who has been denied access to a place of public accommodation can seek both injunctive relief and attorney's fees (including litigation expenses) and costs. *See* 42 U.S.C. 12188(a)(1) (citing 42 U.S.C. § 2000a-3(a)) (injunctive relief); 42 U.S.C. § 12205 (attorney's fees). As noted, Ohio law allows for recovery of damages and injunctive relief. *See* Ohio Rev. Code § 4112.99(A). Plaintiff maintains that inclusion of "damages" with no restrictive modifiers allows for recovery of punitive (in addition to compensatory) damages. (Doc. 16 PAGEID 82 (citing *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, 1219 (Ohio 1999) ("'Damages,' absent a restrictive modifier like 'compensatory,' 'actual,' 'consequential' or 'punitive,' is an inclusive term embracing the panoply of legally recognized pecuniary relief."))). Further, because punitive damages can be recovered, so, too, can attorney's fees. (*Id.* (citing *Sutherland v. Nationwide Gen. Ins. Co.*, 102 Ohio App.3d 297, 301, 657

N.E.2d 281, 283–4 (Ohio Ct. App. 10th Dist. 1995) ("Ohio law has long permitted recovery of attorney fees, even in the absence of statutory authorization, where punitive damages are proper."))[12]).

**Injunctive relief under federal law.** "Ordinarily a federal court considering whether to award permanent injunctive relief to a prevailing plaintiff applies the four-factor test historically employed by courts of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) (holding traditional test applies to disputes arising under the Patent Act); *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay*, applying traditional test to Lanham Act violations). "A plaintiff must demonstrate: (1) the [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391 (citations omitted); *see Hogan v. Cleveland Ave Rest., Inc.*, No. 2:15-cv-2883, 2021 WL 963746, at *1 (S.D. Ohio Mar. 15, 2021) (citing *eBay* and *Audi AG*, applying traditional test to federal and state wage-and-hour laws).

Plaintiff does not address the traditional test in his papers and, in fact, cites no caselaw whatsoever in support of his request for injunctive relief. Accordingly, the Court will decline to exercise its discretion to issue a permanent injunction.

**Damages under Ohio law.** Plaintiff seeks $10,000 in actual damages and $20,000 in punitive damages.

---

[12] *See Magnum Asset Acquisition, LLC v. Green Energy Tech., LLC*, No. 5:19-cv-2930, 2020 WL 377699, at *3 n.4 (N.D. Ohio Jan. 23, 2020).

Mr. Cooley testified that he had "an anxiety and panic attack" after the August 11 telephone call, during which his heart began "racing" and he had "difficulty catching [his] breath."  (Cooley Decl., Doc. 16-1 (¶ 17)).  After ten minutes passed, he was "able to regain some composure and control of [his] breathing and heart palpitations."  (*Id.* (¶ 22)).  After the August 13 telephone call, when he was told that the hotel owner would not allow him to bring his service animal, Mr. Cooley had "a similar mental, emotional, and physical response . . . further exacerbated by the finality of the decision[.]"  (*Id.* (¶ 23)).

Plaintiff argues that Ohio law permits noneconomic losses to be recovered as actual damages.  (Doc. 16 PAGEID 83 (citing *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 855 N.E.2d 825, syl. ¶ 1 (Ohio 2006) (construing compensatory relief then allowed under the Ohio Consumer Sales Practices Act ("OSCPA")).  He contends that the Court should look to the OSCPA for guidance in determining the appropriate amount of actual damages "for egregious illegal conduct by a business, toward a consumer[.]"  (*Id.* PAGEID 84).  Since-revised Ohio Rev. Code § 1345.09(A) allows a consumer to "rescind the transaction or **recover** the consumer's actual economic damages plus **an amount not exceeding five thousand dollars in noneconomic damages**." (Emphasis added).  Because Mr. Cooley suffered two separate instances of public accommodations discrimination because of his disability, he asks the Court to award him $5,000 for each violation, for a total award of $10,000 in noneconomic damages.  The Court finds this statutory analogy to be appropriate and hence awards Plaintiff $10,000 in actual damages.

Plaintiff argues that an award of punitive damages is indicated "given the repeated

9

and clear violations of law." (Doc. 16 PAGEID 85). He explains:

> The course of events in this case gave Defendant two chances to "do the right thing," with time in between to research the business's obligations under the law and make the right call. Defendant failed to do so. Additionally, Defendant's failure to engage in this litigation is instructive. Plaintiff's counsel was contacted by a representative of Defendant on multiple occasions to discuss this pending case. This makes clear that Defendant is aware of the allegations of this case and this case having been filed. Despite all of this, Defendant has not offered any justification for its actions or its positions. Plaintiff's counsel is not aware of, and there is no record of, any type of mitigating factor in this case. Simply put, Defendant has chosen to deny disabled individuals access to its place of public accommodation, in violation of state and federal law, and has offered no justification or defense for this conduct.

(*Id.*).

Having conducted its own research, the Court concludes that an award of punitive damages is not warranted, because Plaintiff has produced no evidence of actual malice. *See Rice*, 84 Ohio St.3d at 422, 704 N.E.2d at 1221 ("Because 'damages' as employed in R.C. 4112.99 cannot be said to preclude the award of punitive damages, we advise the federal court that **punitive damages may be awarded upon evidence of actual malice** in civil actions brought pursuant to the statute.") (emphasis added). "[A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, syl. (Ohio 1989) (italics in original). The first standard is obviously inapplicable here. And the testimony of Mr. Cooley and his counsel—which, at best, describes *reckless* behavior—fails to support the second. *See Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 698, 590 N.E.2d 1228, 1234 (Ohio 1992) ("*Preston* observed that actual malice

requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. **Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously.**") (emphasis added), *overruled in part on other grounds by Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, at syl. ¶ 1 (Ohio 1994); *Gibbons v. Shalodi*, 174 N.E.3d 832, at ¶ 58 (Ohio Ct. App. 9th Dist. 2021) (citing *Motorists*).

**Attorney's fees and costs under federal and state law.** Plaintiff seeks an award of $18,681.15 in attorney's fees and costs, specifically $17,290 in attorney's fees and $1,391.15 in costs. (Docs. 16-2, 18). He supports his request with declarations from one of his attorneys of record, Alexander Darr.[13] (*Id.*).

The Sixth Circuit has explained the analysis of awarding attorneys' fees:

> A "court's initial point of departure, when calculating reasonable . . . fees, is the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley* [*v. Eckerhart*], 461 U.S. [424,] 433, 103 S.Ct. 1933). "The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (quoting S.Rep. No. 94–1011, at 6 (1976) ("counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter.") (internal quotations omitted)). This means that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," and thus "[h]ours that are not properly billed to one's *client*

---

[13] No fees are being sought for hours diaried by Plaintiff's other attorney of record, Jumana M. Ali. (Darr Supp. Decl., Doc. 18 (¶ 6(a) n.1)).

also are not properly billed to one's *adversary* pursuant to statutory authority." *Id*. at 434, 103 S.Ct. 1933. (quotations omitted).

*Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627–28 (6th Cir. 2013) (emphasis in original). Time spent litigating the fee issue ("fees for fees") is properly included in any award. *See Ne. Coal. for Homeless v. Husted*, 831 F.3d 686, 723, 724 (6th Cir. 2016) (citing *Weisenberger v. Huecker*, 593 F.2d 49, 53–54 (6th Cir. 1979)).

Plaintiff requests compensation for 24.7 hours for Mr. Darr. The Court finds that 2.7 of these hours are properly excluded because they involve strictly administrative tasks.[14] Fees will be awarded, then, based on 22 hours of attorney time.

Plaintiff requests an hourly rate for $700.[15] The Court finds this rate to be unreasonably high.

Hourly rates should be calculated according to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for purposes of determining the "prevailing market rates" is the "legal

---

[14] Dec. 28, 2021 (Prepare Requests for Issuance of Summons; confirm contact information for respective defendants. (0.3) File and Serve Case (0.3)); Dec. 29, 2021 (Compile and send service copies. (0.2)); Dec. 31, 2021 (Delivery of Service to Chato LLC confirmed, added to file (0.1)); Jan. 6, 2022 (Review proof of delivery from mail vendor for service. Add both documents to file. (0.2)); Jan. 7, 2022 (Compile documents for personal service vendor for Chato LLC and P&C Motels LLC. Complete personal service forms for matter (0.4)); Jan. 10, 2022 (Communications with personal service vendor re personal service. Add to file. (0.2)); Feb. 18, 2022 (Email from mail vendor – review and add to file (2/18 – (0.1)). Create USPS delivery record and add to file. (2/18 – (0.1)). Review email from vendor and vendor delivery certificate. (2/24 – (0.1)); Mar. 4, 2022 (Prepare and order personal service for Aevum Defendant. (0.2)); Mar. 10, 2022 (Email correspondence from service vendor added to file. (0.1)); Apr. 4, 2022 (Email correspondence with personal service vendor to obtain service affidavit for filing. (0.2)); Apr. 4, 2022 (File executed summons (0.1)). (Doc. 16-2 PAGEID 102–03). June 29, 2022 (File supplemental documents in support of motion for default judgment. (0.1)). (Doc. 18 PAGEID 105 (¶ 4(a))). Had these tasks been diaried by a paralegal and billed at an appropriate rate, the Court would not have excluded them.

[15] Mr. Darr arrived at this hourly rate by conducting an analysis of the Laffey Matrix—which outlines reasonable rates for attorneys in the Washington D.C. area—as adjusted by the federally-compiled locality pay tables. *See Ramsey v. Int'l Computer Systems, Inc.*, No. 1:16-cv-745 (S.D. Ohio Jan. 3, 2017) (Doc. 22 PAGEID 332) (Black, J.). As explained *infra*, the undersigned will instead use the Rubin Committee rates, increased by an appropriate cost-of-living allowance.

12

community within that court's territorial jurisdiction." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) ("This circuit uses the 'community market rule' to calculate a reasonable billing rate.") (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

Judges in the Southern District of Ohio often refer to the Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure their reasonableness. *Planned Parenthood Sw. Ohio Region v. Ohio Dep't of Health*, No. 1:21-cv-00189 (S.D. Ohio Apr. 8, 2021) (Doc. 22)[16]; *Ball v. Kasich*, No. 2:16-cv-282, 2020 WL 3050241, at *2 (S.D. Ohio June 8, 2020); *Doe v. Ohio*, No. 2:91-cv-00464, 2020 WL 728276, at *10 (S.D. Ohio Feb. 12, 2020); *Gibson v. Forest Hills School Dist. Bd. of Educ.*, No. 1:11-cv-329, 2014 WL 3530708, at *6 (S.D. Ohio July 15, 2014); *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-cv-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013); *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio 2010) (citing *West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F. Supp. 2d 914, 932 n.4 (S.D. Ohio 2009)). The Rubin Committee rates are "a list of pre-calculated billing rates tiered by years of experience" to determine a reasonable rate for the area. *Linneman*, 970 F.3d at 630.

Mr. Darr is a 2010 law school graduate, who, since 2013, owns his own firm. (Darr Decl., Doc. 16-2 (¶¶ 21, 24)). After law school, Mr. Darr clerked for a federal district judge and then was associated with a large Chicago law firm. (*Id.* (¶¶ 21, 23)). Under the Rubin Committee rates, he would qualify as an "Intermediate Partner" with

---

[16] *See Planned Parenthood Sw. Ohio Region v. Ohio Dep't of Health*, No. 1:21-cv-00189, 2021 WL 1169102 (S.D. Ohio Mar. 29, 2021) (granting motion to remand and fees (and costs) under 28 U.S.C. § 1447(c)).

13

11-20 years of experience. The Court calculates the 2022 Rubin Committee rate for an attorney with 11-20 years of experience to be $523.64. Based on more than 15 years on the federal Bench, and consistent with the aforementioned calculation, the Court finds that an hourly rate of $525 is a reasonable indicator of hourly rates charged in the Cincinnati market for attorneys with Mr. Darr's experience. Accordingly, it will be applied to the allowed hours diaried by Mr. Darr, for an award of $11,550. (24.0 hours x $525/hour).

As noted, Plaintiff seeks costs (to include litigation expenses) in the amount of $1,393.15. Mr. Darr testifies to their breakdown: filing fee ($402.00); process service fees ($255.00); postage ($54.11); photocopying ($53.04); legal research costs ($629.00). (*Id.* (¶¶ 46, 47)). The Court finds that these costs were reasonably necessary to prosecute this civil action and will award them in full.

### IV. CONCLUSION

Based on the foregoing reasons, Plaintiff Christopher Cooley's Motion for Default Judgment against Defendant Aevum Hotels, LLC (Doc. 13), as supplemented (Doc. 16), is **GRANTED** as to his federal and state claims of disability discrimination. **DEFAULT JUDGMENT** is hereby **ENTERED** in favor of Plaintiff Christopher Cooley and against Defendant Aevum Hotels, LLC in the amount of $10,000 in actual damages. In addition, Plaintiff Christopher Cooley is awarded attorney's fees in the amount of $11,550 and costs in the amount of $1,393.15, for a total award of $12,943.15, which shall be paid directly to Alexander Darr and Darr Law LLC, 1391 W. 5th Ave., Ste. 313, Columbus, Ohio 43212. Finally, Defendant Aevum Hotels, LLC is referred to "U.S. Attorney Parker

14

recognizes Service Dog Awareness Week, reminds public that ADA, FHA protect service animals & owners," United States Department of Justice, United States Attorney's Office for the Southern District of Ohio (July 25, 2022) available at https://www.justice.gov/usao-sdoh/pr/us-attorney-parker-recognizes-service-dog-awareness-week-reminds-public-ada-fha-protect (last visited 7/27/2022).

The Clerk shall serve a copy of this Entry and Order on Aevum Hotels, LLC (by First-Class Mail) through its statutory agent (Darshan Patel, 8590 Colerain Avenue, Cincinnati, OH 45251) registered with the Ohio Secretary of State.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court